FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| | |
| VERONICA D. FRENCH,<br>             Debtor. | Case No. 18-24468 (MBK) |
| VERONICA D. FRENCH,<br>             Plaintiff,<br>        v.<br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION,<br>             Defendant. | Adv. Pro. No. 18-01501 (MBK)<br><br>Chapter 13<br><br>Hearing Date: August 6, 2020 |

**Joseph M. Pinto, Esq.**
Polino & Pinto, P.C.
Moorestown Times Square
720 E. Main St., Suite 1C
Moorestown, NJ 08057
*Counsel for Plaintiff Veronica D. French*

**Betsy Ann Rosenbloom, Esq.**
Williams, Caliri, Miller & Otley, P.C.
1428 Route 23
PO Box 995
Wayne, NJ 07470
*Counsel for Defendant*
*Federal Home Loan Mortgage Corporation*

**Ethan R. Buttner, Esq.**
Reed Smith, LLP
136 Main Street
Suite 250
Princeton, NJ 08540
*Counsel for Defendant*
*Federal Home Loan Mortgage Corporation*

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion for Reconsideration of Motion to Dismiss, and Other Relief ("Motion") (ECF No. 37) filed by Defendant Federal Home Loan Mortgage Corporation ("FHLMC" or "Defendant"). Plaintiff-Debtor, Veronica French, ("Debtor") filed an Opposition (ECF No. 38) and the Defendant Submitted a Reply (ECF No. 44). The Court has reviewed the parties' submissions and has considered fully the arguments presented during oral argument on August 6, 2020. For the reasons set forth below, the Defendant's Motion will be DENIED. However, the Court determines that it is without subject matter jurisdiction to consider the Debtor's claims; therefore, the Complaint will be dismissed without prejudice. The parties are granted stay relief to pursue their respective rights in other appropriate forums.

**I.     Background**

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here. In relevant part, the Debtor purchased the property located at 2 Grant Court, Columbus, New Jersey 08022 (the "Property") as new construction in 2000 for $226,766.89. Her purchase was financed with a $155,550.00 purchase money mortgage which, after a series of assignments, was held by Bank of New York. Debtor defaulted on her mortgage in 2002. The lender obtained a judgment of foreclosure in 2003, but did not proceed to sheriff's sale. The lender then brought a second foreclosure action in 2004, which concluded in a second uncontested foreclosure judgment against the Debtor in 2004.

The Debtor states that prior to a sheriff's sale in connection with the second foreclosure judgment, she consulted a financial firm, JP Global Property Management ("Global") in an attempt

to save her home. As a result of her dealings with Global, title to the Property was transferred to an individual named Mary Ann Sorvino ("Sorvino"), an agent of Global, for stated consideration of $370,000.00. The Debtor maintains that this transfer was accomplished by way of a forged deed and without the Debtor's knowledge. Sorvino then executed a mortgage to Argent Mortgage Co., LLC in the amount of $296,000.00 (the "Argent Mortgage") and used the proceeds to satisfy the foreclosure judgment held by Bank of New York. The Debtor was permitted to remain in the Property and—for some period of time—made payments to Global which she alleges were for principal, interest, taxes and insurance.

On October 15, 2007, Sorvino executed a deed transferring the Property to another agent of Global, an individual named Vincent LaTorre ("LaTorre"). LaTorre then gave a mortgage on the Property to Wells Fargo Bank, N.A. in the amount of $375,250.00 (the "Wells Fargo mortgage"). The Complaint alleges that the Argent mortgage was paid off and discharged of record on October 31, 2006.[1] LaTorre defaulted on the Wells Fargo mortgage and Wells Fargo commenced a foreclosure action in 2008.

On October 15, 2008, the New Jersey Attorney General filed a complaint against, among others, Global, Sorvino, and LaTorre alleging they were involved in an illegal foreclosure rescue scheme. The Debtor was identified as an injured party. On April 2, 2009, the New Jersey Attorney General sent a letter to foreclosure counsel for Wells Fargo informing them of the consumer fraud

---

[1] It is unclear to the Court whether the 2006 date is a typo. It would make logical sense that the Argent mortgage would have been paid off *after* LaTorre obtained the Wells Fargo loan in 2007. The Court was unable to locate the supporting documentation related to the pay-off of the Argent mortgage, which is identified as "Exhibit G" in the Debtor's brief. *Debtor's Brief in Opp'n* at 25 ¶ 17, ECF No. 38. Moreover, in the "Table of Contents for Exhibits," Exhibit G is described simply as the deed from Sorvino to LaTorre. *Id.* at 48. In any event, it is undisputed that the Argent mortgage was satisfied, and the precise date of satisfaction is immaterial to resolution of this matter.

3

action and advising, on the Debtor's behalf, that the Debtor was living in the Property and wished to continue to do so. It is undisputed that Wells Fargo did not amend its foreclosure complaint to name the Debtor as a party in interest; nor did the Debtor attempt to contact Wells Fargo to pursue a resolution.

Wells Fargo continued its foreclosure action and obtained a final judgment of foreclosure against LaTorre on May 28, 2009. An amended final judgment was entered on August 3, 2015, in the amount of $405,525.04. Wells Fargo was the successful bidder at a sheriff's sale in March 2016 and the bid was assigned to the Defendant. The Defendant commenced an action seeking to evict the Debtor in October of 2016. At that time, the Debtor retained an attorney and sought to intervene in the foreclosure action and vacate the sheriff's sale. On February 7, 2017, the Debtor's motion to intervene was denied and the parties were ordered to participate in mediation; however, the parties failed to reach a settlement. The Debtor did not appeal the denial of her motion to intervene. On May 25, 2018, the Debtor—through new counsel—sought an emergent order staying her eviction and reopening mediation. The motion likewise was denied and the Debtor did not appeal.

On July 13, 2018, the Debtor filed the instant Complaint in the United States District Court for the District of New Jersey, seeking to quiet title to the Property and seeking title to the Property free and clear. Shortly thereafter, on July 19, 2018, the Debtor filed for bankruptcy under chapter 13. On October 2, 2018, the Complaint was referred to this Court and opened as an adversary proceeding (Adv. Pro. No. 18-01501). In response to the Complaint, the Defendant filed a Motion to Dismiss. After briefing and oral argument, this Court denied the Motion to Dismiss for reasons

4

discussed on the record during the hearing on April 9, 2020. *Order Denying Motion to Dismiss*, April 10, 2020, ECF No. 17. The Defendant filed an Answer and the case proceeded. With the assistance of the Court, the parties engaged in settlement discussions; however, the negotiations were unsuccessful. On July 24, 2020, the Defendant filed the instant Motion seeking reconsideration of this Court's April 10, 2020 Order denying the Defendant's initial motion to dismiss. The Defendant again seeks dismissal of the adversary proceeding based on theories of res judicata, collateral estoppel, *Rooker-Feldman*, and abstention. The Motion alternatively seeks summary judgment and stay relief.

## II.    Discussion

### A.  Motion for Reconsideration

The Federal Rules of Bankruptcy Procedure do not recognize a "motion for reconsideration." Such a motion is not mentioned in the Federal Rules of Civil Procedure, nor is it provided for in our Local Bankruptcy Rules. Nevertheless, this Court has previously determined that it possesses the inherent power to reconsider its orders at any time before final judgment. *See In re Dots, LLC*, 562 B.R. 286, 291 (Bankr. D.N.J. 2017) (collecting cases and discussing bankruptcy court's authority to reconsider its interlocutory orders at any time when it is consonant with justice to do so); *see also In re Kara Homes, Inc.*, No. 06-19626, 2019 WL 4897010, at *3 (Bankr. D.N.J. Oct. 3, 2019), *adopted*, No. 19-CV-17223, 2020 WL 3496958 (D.N.J. June 29, 2020). The Third Circuit has likewise reached this conclusion. *In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018), *cert. denied sub nom. NextEra Energy, Inc. v. Elliott Assocs., L.P.*, 139 S. Ct. 1620, 203 L. Ed. 2d 898 (2019) (holding that while the bankruptcy rules do not

expressly authorize motions for reconsideration, bankruptcy courts, like any other federal court, possess inherent authority and such authority permits courts to reconsider prior interlocutory orders at any point during which the litigation continues, as long as the court retains jurisdiction over the case).

The Court notes that, in support of its motion, the Defendant cites to Federal Rule of Civil Procedure 59(e), which is made applicable to the bankruptcy court under Federal Rule of Bankruptcy Procedure 9023. Rule 59 encompasses a Motion for a New Trial or to Alter or Amend a Judgment and "the rule only applies to final judgments, not interlocutory orders." *Zitter v. Petruccelli*, No. 15-6488, 2017 WL 1837850, at *2 (D.N.J. May 8, 2017); *see also In re Kara Homes, Inc.*, 2019 WL 4897010, at *3. Here, the Court is tasked with reconsideration of an interlocutory order; thus, Rule 59(e) does not apply. However, in discussing the appropriate standard to be used by bankruptcy courts when exercising their inherent powers of reconsideration, the Third Circuit has on at least one occasion approved use of the same standards governing motions under Rule 59. *See In re Energy Future Holdings Corp.*, 904 F.3d at 311 (approving of the use of the Rule 59 standard in the context of an order approving a merger agreement and accompanying termination fee provision). Thus, it may be appropriate for a court to exercise its inherent power to reconsider an interlocutory order where there is: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." FED. R. CIV. P. 59(e); *see also In re Energy Future Holdings Corp.*, 904 F.3d at 311; § 4478 Law of the Case, 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.) § 4478.1 Law of the

Case—Trial Courts, 18B Fed. Prac. & Proc. Juris. § 4478.1 (2d ed.) (approving use of this standard in a discussion on the court's "necessary authority to correct itself").

In this case, the Court's denial of the Defendant's initial motion to dismiss was premised on the Court's concern that, at that time, it could not dismiss the Complaint based on abstention doctrines, *Rooker-Feldman*, or estoppel when it was undisputed that the Debtor was not a party to the underlying foreclosure action. *See, e.g.*, *Transcript of April 9, 2020 Hearing* at 12, Lines 1-6, (pg 14, Lines 18-20), (pg 20 Lines 8-13), ECF No. 20. In the present Motion, the Defendant reiterates these arguments and, aside from reciting the standard for a motion for reconsideration, fails to explain the precise basis for reconsideration of this Court's initial determination—apart from suggesting that the Court "may have [previously] misapprehended the facts of the case" in denying the Defendants first motion to dismiss. *Motion* at 12, ECF No. 37.

The Court's concerns regarding the application of the *Rooker-Feldman*, res judicata, and estoppel doctrines remains a bar to the requested relief. It is still undisputed that the Debtor was not a party to the foreclosure proceeding and the Court is now more confident that the merits of the Debtor's allegations of forgery and her claims to the Property were not addressed in the state court—which renders *Rooker-Feldman*, claim preclusion, and the estoppel doctrines inapplicable. "The *Rooker–Feldman* doctrine "precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments." *Robinson v. New Jersey Mercer Cty. Vicinage-Family Div.*, 514 F. App'x 146, 150 (3d Cir. 2013) (internal citations and quotations omitted); *see also, e.g.*, *Davis v. Bank of Am., NA*, No. 19-13515, 2020 WL 2764802, at *4 (D.N.J. May 27, 2020) (noting that under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter

7

jurisdiction to engage in appellate review of state court determinations). However, the Third Circuit has clarified that the *Rooker-Feldman* Doctrine does not bar a district court from hearing a plaintiff's claims where the plaintiff was not a party to the state court action. *See Marks v. Stinson*, 19 F.3d 873, 885 n.11 (3d Cir. 1994).

Likewise, "[r]es judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit" and requires: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). Here, there merits of the Debtor's claims were not addressed in the state court, she was not permitted to intervene as a party in the foreclosure litigation, and the instant action seeks to resolve a title dispute—a cause of action distinct from foreclosure.

Finally, as to collateral estoppel, "New Jersey follows the usual rule that collateral estoppel bars litigation of facts fully litigated and actually determined in a prior action, even one involving a different claim or cause of action." *Farah v. Lasalle Bank Nat'l Ass'n as Tr. for WAMU Mortg. Pass-Through Certificates Series 2006-AR7 Tr.*, No. 15-CV-2602, 2020 WL 2521278, at *14 (D.N.J. May 18, 2020) (citing *Tarus v. Pine Hill,* 189 N.J. 497, 520 (2007)). In order for the collateral estoppel doctrine to apply, "[t]he issue must (1) be identical to the one previously litigated; (2) have been actually litigated; (3) have been asserted in a case that went to judgment on the merits; (4) have been essential to the prior judgment; (5) be asserted against the same party,

8

or one in privity." *Id.* (citing *Twp. Of Middletown v. Simon,* 193 N.J. 228, 236 (2008)). Here, the Debtor was not a party to the underlying foreclosure action and the issues raised in her Complaint regarding forgery and her interest in the Property have not been litigated in the state court and did not result in a judgment on the merits.

Although the Defendant frames the Complaint as an attempt to relitigate or improperly collaterally attack the final judgment of foreclosure, New Jersey state law clarifies that a final foreclosure judgment does not preclude a non-party to that foreclosure action from pursuing a civil action to resolve a title dispute. *See, e.g.*, *Residential Mortg. Loan Tr. 2013-TT2 by U.S. Bank Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, 457 N.J. Super. 237, 198 A.3d 1025, 1028 (App. Div. 2018) (discussing N.J. STAT. ANN. § 46:18-13 and holding that res judicata did not bar quiet title action); *Suser v. Wachovia Mortg., FSB*, 433 N.J. Super. 317, 78 A.3d 1014, 1018 (App. Div. 2013) (discussing N.J. STAT. ANN. 2A:62–1 and noting that one of its purposes is to permit a landowner to sue for clarification of the validity or reach of her title in circumstances that otherwise preclude a forum for the resolution of such a dispute). Therefore, there was no misapprehension of the facts, and there is nothing before the Court which warrants reconsideration of its prior determination that, on this record, *Rooker-Feldman*, res judicata, and estoppel do not preclude this Court's consideration of the Debtor's claims.

Likewise, the abstention doctrines cited by the Defendant do not apply to the circumstances of this case. As an initial matter, this Court notes that in *Sprint Commc'ns, Inc. v. Jacobs* the Supreme Court limited the scope of the *Younger* abstention doctrine and changed the test for its applicability. 571 U.S. 69, 78, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013); *see also Hamilton*

9

*v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017) (examining *Sprint*). Thus, "*Younger* applies to only 'three exceptional categories' of proceedings: (1) 'ongoing state criminal prosecutions'; (2) 'certain civil enforcement proceedings'; and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (quoting *Sprint*, 571 U.S. at 78–79, 134 S. Ct. 584 (citations and quotations omitted)). The matter presently before this Court does not meet any of these descriptions. Further, in support of its *Younger* abstention argument, the Defendant uses the incorrect test and cites to a pre-*Sprint* case: *Downey v. Perrault*, Case No. 08-1018, 2009 WL 3030051, at *1 (D.N.J. Sept. 15, 2009). "While Courts in this District had previously abstained where there were ongoing state foreclosure proceedings, . . . the Court finds that *Sprint* changes the analysis significantly such that these cases are no longer persuasive." *Chambers v. Wells Fargo Bank, N.A.*, No. CV 15-6976, 2016 WL 3533998, at *4 n.5 (D.N.J. June 28, 2016), *aff'd*, 726 F. App'x 886 (3d Cir. 2018) (rejecting *Downey* as unpersuasive).

Pursuant to the *Colorado River* doctrine, a federal court may abstain, either by staying or dismissing pending federal action, when there is parallel ongoing state court proceeding. *See In re Farzan*, No. 19-29256, 2020 WL 2769046, at *8 (Bankr. D.N.J. May 27, 2020) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976)). In this case, there is no ongoing state court action to quiet title and, as set forth above, such an action is not precluded by the existence of a final judgment of foreclosure under New Jersey law. Therefore, the *Colorado River* doctrine does not apply.

Finally, the Defendant seeks dismissal under the Entire Controversy Doctrine. Pursuant to this doctrine, "a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). "As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties." *Id.* With specific respect to foreclosures of mortgages, the Third Circuit has said that the Entire Controversy Doctrine has a narrower application and does not preclude "non-germane claims against the mortgagor or other persons liable on the debt" except upon court order for good cause. *Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Bos. MBS ARMT 2005-8*, 806 F. App'x 101, 105 (3d Cir. 2020) (citing N.J. Ct. R. 4:64-5 and discussing germane versus non-germane claims in the context of a foreclosure action). In foreclosure proceedings, "germane claims are those arising out of the mortgage transaction which is the subject matter of the foreclosure action." *In re Mullarkey*, 536 F.3d at 230. Here, the Debtor was not a party to the mortgage and her allegations of forgery are against a third party who also is not a party to the mortgage and do not implicate the mortgage transaction which is the subject of the foreclosure action. Accordingly, the Court is satisfied that the claims in the Complaint are not germane to the foreclosure proceeding and are not precluded by the Entire Controversy Doctrine.

In light of the above, dismissal of the Complaint for the reasons set forth in the Defendant's Motion is not warranted. However, the parties' arguments and the discussion during the hearing on this Motion raise questions regarding this Court's subject matter jurisdiction in general. Indeed, a threshold question in any case is whether this Court has jurisdiction to grant the requested relief.

Although this issue was not specifically raised by the parties, the bankruptcy court, like all federal courts, is obliged to raise *sua sponte* the issue of whether it has jurisdiction over any pending matter. *See, e.g.*, *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116 (3d Cir. 2016) (stating that a court may raise jurisdictional issues *sua sponte*); *In re Wilton Armetale, Inc.*, No. 16-16779 (JKF), 2019 WL 1150032, at *1 (Bankr. E.D. Pa. Mar. 11, 2019) (noting that a federal court is obligated to determine whether it has subject matter jurisdiction before proceeding to the merits of the case); *In re: Green Field Energy Servs., Inc.*, 554 B.R. 315, 319 (Bankr. D. Del. 2016) ("The obligation to examine subject matter jurisdiction exists even when there is no objection.") (citing *Nuveen Mun. Trust v. Withum Smith Brown, P.C.,* 692 F.3d 283, 293 (3d Cir. 2012); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006)); *In re Venuto*, 343 B.R. 120, 125 (Bankr. E.D. Pa. 2006).

In denying the Defendant's initial motion to dismiss, this Court made an implicit finding that it had subject matter jurisdiction to address the Complaint.[2] For the reasons explained below, this Court now determines that it lacks subject matter jurisdiction to consider the merits of the Debtor's claims. *See, e.g.*, *In re Spree.Com Corp.*, 295 B.R. 762, 767 (Bankr. E.D. Pa. 2003) (reevaluating prior finding of "related to" jurisdiction).

---

[2] The Court's finding at that juncture was bottomed on the fact that the Debtor's chapter 13 plan had not yet been confirmed and it appeared that successful prosecution of the Adversary Proceeding was inextricably intertwined with feasibility of the plan. Since then, however, the Court has confirmed the Debtor's plan—which is not dependent upon the success of the pending litigation—and the claims, along with all of the estate assets, have re-vested in the Debtor. If there were subject matter jurisdiction at the outset, for the reasons explained *infra*, it no longer exists.

12

### B. Jurisdiction

Pursuant to 28 U.S.C. § 1334 bankruptcy jurisdiction extends to four types matters: (1) cases 'under' title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" title 11; and (4) proceedings "related to" a case under Title 11. 28 U.S.C. §§ 1334(b), 157(a); *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995); *In re G-I Holdings, Inc.*, 580 B.R. 388, 423 (Bankr. D.N.J. 2018). "Matters 'under' title 11 simply refers to the bankruptcy petition itself." *In re Rusciano*, No. 15-32888, 2020 WL 111470, at *4 (Bankr. D.N.J. Jan. 8, 2020) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)).

> [A] case "arises under" title 11 if it invokes a substantive right provided by title 11. Proceedings "arise in" a bankruptcy case, if they have no existence outside of the bankruptcy. Finally, a proceeding is "related to" a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.

*In re G-I Holdings, Inc.,* 580 B.R. at 423 (citing case *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), *as amended* (Mar. 17, 2006). Here, the instant adversary proceeding does not implicate a substantive right provided by title 11 and is an action premised solely on state law—a cause of action that can, and should, exist outside of the bankruptcy. Therefore, it does not "arise under" or "arise in" the bankruptcy case. Accordingly, this Court's jurisdiction over the Debtor's claims is only appropriate if the proceeding is "related to" her bankruptcy case. For the reasons that follow, the Court determines that it is not.

As an initial matter, the Debtor's plan in this case was confirmed on April 15, 2020 (*In re French*, Case No. 18-24468 (MBK), ECF No. 66) and the Debtor's estate assets have re-vested in the Debtor. Nevertheless, "related to" jurisdiction may still exist if the claims of the Complaint

sufficiently impact the Debtor's confirmed plan or are necessary for effective reorganization. The proper standard for determining whether "related to" jurisdiction exists at the post-confirmation stage depends on when the cause of action was filed. *See, e.g.*, *In re MPC Computers, LLC*, 465 B.R. 384, 391 (Bankr. D. Del. 2012) (comparing tests applied in the Third Circuit for "related to" jurisdiction over pre-confirmation versus post-confirmation claims). The Third Circuit Court of Appeals has clarified that "with respect to 'related to' jurisdiction, the *Pacor* test applies in all disputes raised pre-confirmation and the 'close nexus' test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265 (3d Cir. 2007) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Here, the Debtor's Complaint was filed pre-confirmation; therefore, the Court will apply the *Pacor* test to determine whether "related to" jurisdiction exists.

As articulated in *Pacor*, "[t]he test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor*, 743 F.2d at 994 (emphasis in original). More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* Moreover, courts have focused on whether the proceeding in question was identified in, or contemplated by, the debtor's plan. *See In re MPC Computers, LLC*, 465 B.R. 384, 393 (Bankr. D. Del. 2012) (collecting cases); *Jazz Photo Corp. v. Dreier LLP,* Civ. No. 05–5198, 2005 WL 3542468, at *5 (D.N.J. Dec. 23, 2005) (applying the *Pacor* test to a legal malpractice action commenced by the debtor pre-

14

Document    Page 15 of 20

confirmation but prosecuted post-confirmation, and holding that the bankruptcy court had "related to" jurisdiction over the proceeding where it was "clearly contemplated in the disclosure statement, in the plan and in various motions").

In this case, the Debtor did not contemplate this action as a means of implementing her plan. In fact, the terms of the Order confirming the Debtor's chapter 13 plan specifically state that the claims against FHLMC "shall be resolved outside the Plan through a pending Adversary case." *In re French*, Case No. 18-24468 (MBK), ECF No. 66; c*f. In re MPC Computers, LLC*, 465 B.R. 384 (holding that adversary proceeding commenced prepetition and litigated postpetition was related to the debtor's bankruptcy case under *Pacor* and subsequent cases, in part, because the action was clearly contemplated in the debtor's plan). Here, there is no post-confirmation estate to be affected by the quiet title action. The Debtor's claims were not contemplated in her confirmed plan and were only identified to the extent they were specifically excluded from the plan. The claims have no impact on the Debtor's confirmed plan, their resolution does not require interpretation of the plan, nor are the claims essential, or even necessary, to or for her effective reorganization. Thus, the claims in the Complaint do not satisfy the "related to" jurisdictional test delineated in *Pacor* and the Court is without jurisdiction to consider the allegations made.

### C. Abstention

Even assuming proper jurisdiction, this Court would abstain from hearing the claims of the Complaint. "It is well-settled that a court may raise the issue of abstention *sua sponte*." *In re MicroBilt Corp.*, 484 B.R. 56, 66 (Bankr. D.N.J. 2012) (citations omitted). "Abstention in the bankruptcy court is governed by 28 U.S.C. § 1334(d) and 11 U.S.C. § 305(a), which confer

15

discretion upon bankruptcy courts to dismiss or suspend an action should such decision better the interests of the parties." *Id.* Under the permissive abstention doctrine,[3] "bankruptcy courts have broad discretion to abstain from hearing state law claims . . . and such decision is committed to the sound judgment of the court." *In re G-I Holdings, Inc.,* 580 B.R. 388, 425-26 (Bankr. D.N.J. 2018); *see also In re LTC Holdings*, *Inc.*, 587 B.R. 25 (stating that nothing prevents a bankruptcy court from considering issue of permissive abstention *sua sponte*); *MicroBilt Corp.*, 484 B.R. at 66. Although courts in this circuit have used both a seven-factor and a twelve-factor test determine whether permissive abstention is warranted, these courts have also observed that the two sets of factors are substantially similar and that not all the factors necessarily need to be considered. *See e.g.*, *In re D'Angelo*, 491 B.R. 395, 406 (E.D. Pa. 2013); *Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, No. 10-6766, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011); *Monmouth Inv'r, LLC v. Saker*, No. 09-3063, 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010). Ultimately,

---

[3] The Court notes that mandatory abstention under § 1334(c)(2) is inapplicable to the facts of this case. Where a claim is "related to" a case under title 11, or is a "non-core" proceeding, *Stoe v. Flaherty*, 436 F.3d at 217 (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004), *as amended* (Feb. 23, 2005)) a bankruptcy court must abstain from hearing the "non-core" proceeding if:

> (1) a timely motion is made; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 or "arise in" a case under title 11; (4) federal courts would not have jurisdiction absent its relation to a bankruptcy case; (5) an action is "commenced" in a state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in the state forum.

*In re G-I Holdings, Inc.,* 580 B.R. 388, 425 (Bankr. D.N.J. 2018) (citing *Stoe v. Flaherty*, 436 F.3d at 213). Here, a federal district court may have jurisdiction over the Debtor's claims absent the proceeding's relation to this bankruptcy case because, as counsel for Debtor clarified on the record during oral argument, this action was brought in federal district court prior to the filing of the bankruptcy premised on diversity of jurisdiction between the parties. Moreover, "[m]andatory abstention applies only '[u]pon timely motion of a party' . . . ." *Stoe*, 436 F.3d at 219 n.4 (quoting 28 U.S.C. § 1334(c)(2)); *see also In re LTC Holdings, Inc.*, 587 B.R. 25 (Bankr. D. Del. 2018) (noting that a bankruptcy court may not apply principles of mandatory abstention in absence of timely motion for abstention). Although Defendant's motion cites multiple bases for dismissal and/or abstention, it does not address mandatory abstention or raise allegations which implicate § 1334(c)(2).

16

"[t]he determination of whether to exercise discretionary abstention is fact driven, and the factors should be applied flexibly." *In re G-I Holdings, Inc.*, 580 B.R. at 426.

> The seven-part test includes the following factors: 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of the right to a jury trial; and 7) prejudice to the involuntarily removed defendants.
>
> The twelve-part test includes: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.
>
> *In re G-I Holdings, Inc.*, 580 B.R. at 426 (citations omitted).

As to the factor relating to the administration of the Debtor's estate, the Court reiterates that the claims in the Complaint will have no effect on the efficient administration of the bankruptcy estate and will have no effect on the efficient administration of the Debtor's confirmed chapter 13 plan. Likewise, as to the factor regarding the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, it is undisputed that the claims of the Complaint are unrelated to the main bankruptcy case. Further, the interests of comity favor abstention because, even if this Court were to award title to the Debtor, as requested in the Complaint, the Debtor's counsel concedes that the Defendant would be entitled to a lien on the Property and would be

17

required to return to state court to commence yet another foreclosure proceeding. In that same vein, it is more efficient to have one court—the state court—address both the quiet title claims and any subsequent foreclosure proceeding. This also relieves the burden on this Court's docket in an otherwise nearly final chapter 13 case.

As to the factor addressing whether a litigant is engaged in forum shopping, this Court notes—without finding—that the filing of this proceeding in the district court suggests forum shopping and/or a calculated effort to delay eviction. Although the Debtor's counsel cited diversity of citizenship as the basis for bringing the action in the district court, such a strategy seems unusual given that the Complaint involves solely state law issues and given counsel's admitted understanding that even if the Debtor receives the relief she seeks, the parties would be obligated to return to the state court to litigate another foreclosure. This strategy certainly has benefited the Debtor in prolonging resolution of this matter and delaying eviction. However, if this Court abstains, the parties will be free to pursue their rights in a streamlined fashion in a single forum. Finally, the Court considers that the Complaint is comprised entirely of state law issues. The claims do not require interpretation of the confirmed plan, federal statutes, or complex bankruptcy issues. The state court is more than capable—and perhaps better equipped—to resolve the claims of the Complaint. *See In re G-I Holdings, Inc.*, 580 B.R. at 426 ("The United State Supreme Court has found that permissive abstention is most appropriate when a case is dominated by state law issues or raises unsettled issues of state law.") (quoting *In re U.S.H. Corp. of New York,* 280 B.R. 330, 337 (Bankr. S.D.N.Y. 2002)).

18

In weighing all the factors, this Court determines that—to the extent this Court has jurisdiction—permissive abstention is appropriate. In reaching this determination the Court also considers the parties' representations during oral argument that they are not opposed to addressing these issues in the state court.

### D. Dismissal of the Complaint

Having determined, in the first instance, that this Court lacks subject matter jurisdiction to consider the merits of the Complaint and, in the second instance, that even if jurisdiction were appropriate, this Court would permissively abstain, this Court must dismiss the Complaint. This case cannot and should not remain pending before the Bankruptcy Court. However, this case was not removed from state court and, thus, cannot be remanded. Moreover, the matter was referred to this Court from the district court and the Bankruptcy Court is without authority to withdraw the reference and send the matter back to the district court. *See, e.g.*, *In re J&J Towne Pharmacy, Inc.*, No. 99-17560, 2000 WL 568355, at *11 (Bankr. E.D. Pa. May 5, 2000) (interpreting 28 U.S.C. § 157(d) which authorizes withdrawal of the reference by district court); *In re Kool, Mann, Coffee & Co.*, 234 B.R. 873 (D.V.I. 1999) (recognizing that an order of reference may only be withdrawn upon the action of a judge of the district court which referred the matter and not the bankruptcy judge to which it was referred and noting that bankruptcy judge lacks any colorable authority or jurisdiction to rule on any motion to transfer a case back to the district court and has absolutely no authority to vacate a duly entered order of reference of the district court). Thus, the only course of action left to this Court is dismissal of the action. The Court further grants the parties stay relief so that they may freely pursue their respective rights elsewhere.

### E. Summary Judgment

The Defendant alternatively seeks summary judgment in its favor. For the reasons discussed, this Court is without jurisdiction to consider the merits of this request and, in the alternative, the Court abstains.

## III. Conclusion

For the reasons set forth above, the Defendant's Motion for Reconsideration is DENIED. However, the Court determines that it lacks subject matter jurisdiction to address the claims of the Complaint; therefore, the action will be dismissed without prejudice. Both parties are granted stay relief to pursue their respective rights in state court. The Court will enter a form of Order consistent with this Opinion.

*/s/ Michael B. Kaplan*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: August 28, 2020